UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ERICA EDWARDS,

      Plaintiff,                   File No. 1:24-CV-

v.                             Hon.

KRIMSON, LLC and
RENTGROW, INC.,

      Defendants.

_____

## COMPLAINT AND JURY DEMAND

_____

### COMPLAINT

Now comes Plaintiff, Erica Edwards, by and through her attorneys, and states as follows:

### PARTIES AND JURISDICTION

1.    Plaintiff, Erica Edwards, is a Black female who resides in Ingham County in the Western District of Michigan.

2.    Defendant Krimson, LLC (hereinafter, "Krimson") is a Michigan corporation that regularly does business in Ingham County in the Western District of Michigan.

1

3.     Defendant RentGrow, Inc. (hereinafter, "RentGrow") is a Delaware corporation that regularly does business in Ingham County in the Western District of Michigan.

4.     This Court has subject matter jurisdiction based on 28 U.S.C. § 1331.

5.     This Court may exercise supplemental jurisdiction over the state law claims asserted because they arise from a common nucleus of operative facts and are so related with the federal claims asserted as to form part of the same controversy under Article III of the U.S. Constitution, pursuant to 28 U.S.C. § 1367(a).

6.     Venue in this district is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## FACTUAL BACKGROUND

### Plaintiff's Application to Willoughby Estates

7.     Krimson is a property management company that manages rental properties in West and Mid-Michigan.  Krimson manages Willoughby Estates, a rental community in Holt, Michigan.

8.     On or around February 1, 2022, Ms. Edwards applied for a rental apartment at Willoughby Estates.

9.     When she applied, Ms. Edwards was living in an apartment at Waverly Place, a complex also located in Holt.  Ms. Edwards's lease at Waverly Place was scheduled to end in April 2022.

10.     On or around February 11, 2022, Ms. Edwards sent her paystubs to Kurt Norton, the property manager at Willoughby Estates, to complete her application.  That same day, Mr. Norton requested a tenant screening report from RentGrow.

11.     According to its website, RentGrow provides resident screening reports to property owners and managers, which may include an applicant's credit history, rental history, and other publicly reportable civil and criminal records.

12.     On February 14, 2022, RentGrow completed a tenant screening report for Ms. Edwards and sent it to Willoughby Estates.

13.     The top line of the tenant screening report from RentGrow stated: "Application Result: REJECT."  (Ex. 1.) The report further stated that Ms. Edwards had a criminal history that did not meet Willoughby Estates' requirements.  (*Id.*)

14.     Upon information and belief, RentGrow also generated a form letter for Willoughby Estates to provide to Ms. Edwards stating that her application was denied because she "did not meet the property's minimum rental requirements." (Ex. 2.)  The letter went on to state: "Criminal History Does Not Meet Property Requirements."  (Ex. 2.)

15.     In fact, Ms. Edwards' criminal history was expunged.  Prior to 2020, Ms. Edwards had a conviction for carrying a concealed weapon.  However, on November 4, 2020, the 30th Circuit Court entered an order expunging Ms. Edwards's conviction. Under Michigan law, once that order was entered, Ms.

Edwards was "considered not to have been previously convicted." Mich. Comp. Laws § 780.622(1).

16. After the court entered the order expunging Ms. Edwards's conviction, it sent the order to the Michigan State Police (MSP), as required by Mich. Comp. Laws § 780.623(1). On or around November 10, 2020, the MSP removed the expunged criminal conviction from Ms. Edwards's publicly available criminal record, including her record in the Internet Criminal History Access Tool (ICHAT).

17. Law enforcement agencies, prosecutors, and courts in all of Michigan's counties are required to report felonies and serious misdemeanors punishable by more than 93 days to the MSP. The MSP uses these records to maintain the ICHAT, which allows for the search of public criminal history record information. ICHAT is the only public resource for name-based Michigan criminal history background checks.

18. Upon information and belief, RentGrow did not run a background check through ICHAT. If it had, it would have learned that Ms. Edwards did not have a criminal history. RentGrow's failure to check Ms. Edwards's name in ICHAT led it to report inaccurate information about Ms. Edwards's criminal history to Willoughby Estates.

19. By reporting the expunged conviction to Willoughby Estates, RentGrow violated MCL 780.623(5), which makes it a misdemeanor for "any person other than the person whose conviction was set aside or a victim, who knows or should have known that a conviction was set aside" to "divulge[], use[], or publish[]

information concerning a conviction set aside under [the Michigan expungement statute]."

20.     RentGrow's failure to utilize reasonable procedures to confirm the accuracy of Ms. Edwards's criminal history led it to provide an inaccurate report to Willoughby Estates, which in turn led Willoughby Estates to reject Ms. Edwards's application.

21.     Upon information and belief, Willoughby Estates did not conduct an individualized assessment of Ms. Edwards's criminal history to determine whether it indicated that she would present a risk to resident safety and/or property; rather, it simply relied on RentGrow's erroneous conclusion that Ms. Edwards's application should be rejected.

22.     On February 14, 2022, Ms. Edwards called Mr. Norton to inquire about the status of her application.  Mr. Norton told Ms. Edwards that she had been denied based on her background check and that applicants with felonies are not accepted.  Ms. Edwards emailed Mr. Norton after that call to confirm the policy, stating: "If you have only one felony, you can't live on the property."

23.     Mr. Norton responded: "That's correct.  During the resident screening process if a felony is present, the application will be denied, unfortunately."

24.     Had Krimson conducted an individualized assessment, it would have learned that Ms. Edwards did not have a criminal conviction.

25.     Following the entry of the order of expungement in 2020, Ms. Edwards believed that she had put the conviction behind her and could move forward with

her life. When Ms. Edwards learned why her application had been denied, she experienced significant anxiety and depression, and she became concerned that she would not be able to find new housing due to her expunged conviction.

26.    After she learned that Willoughby Estates had rejected her based on an inaccurate criminal background check by RentGrow, Ms. Edwards filed a dispute with RentGrow.

27.    On or around February 21, 2022, RentGrow corrected its screening report.  The updated screening report said that Ms. Edwards met the property requirements for criminal history. As such, the report concluded that the result of the screening was to accept Ms. Edwards.

28.    Upon information and belief, RentGrow sent its updated screening report to Mr. Norton as soon as it was completed.

29.    Ms. Edwards did not hear anything from Willoughby Estates after the screening report was corrected.

30.    On March 31, 2022, Ms. Edwards reached out to Willoughby Estates by email, saying that she was ready to move forward on leasing the unit.  Mr. Norton responded that there was not currently a unit available, and that one would not be available until the end of May.

31.    Ms. Edwards had to move before the end of May, however, since her lease ended in April.  Because a unit was no longer available on the date she needed, Ms. Edwards was not able to lease a unit at Willoughby Estates.

32.     Ms. Edwards was ultimately forced to move to an apartment outside the Holt school district, where she had been living for many years and where her son attended elementary school. Ms. Edwards knew the Holt school district well, since her older son had also attended schools there, and both she and her son felt comfortable being in that school district.

33.     Because she could not find housing in the Holt school district, Ms. Edwards was forced to move to an apartment in another district and her son had to switch schools mid-year. Ms. Edwards and her son suffered emotional distress due to the move.

### Racial Disparities and Criminal Convictions

34.     The Fair Housing Act and ELCRA prohibit facially neutral practices that have a disparate impact on the basis of race, unless they are necessary to achieve a substantial, legitimate, nondiscriminatory business interest that cannot be served through a less discriminatory alternative practice.

35.     In the United States, Blacks are incarcerated at a rate that is disproportionate to their population.  Blacks make up 38.5% of all inmates,[1] although they only make up 13.6% of the U.S. population.[2]

36.     There are significant racial disparities in the population-wide rate of incarceration. Nationwide, approximately 350 individuals are imprisoned per

---

[1] See Federal Bureau of Prisons, Inmate Race (2023), https://www.bop.gov/about/statistics/statistics_inmate_race.jsp.
[2] See U.S. Census Bureau, Quickfacts: Race and Hispanic Origin (2022), https://www.census.gov/quickfacts/fact/table/US/RHI225217#RHI225217.

100,000; however, the rate of Black individuals imprisoned is 4.8 times the rate of white individuals.[3]

37.    In Michigan, the disparity is even starker; the rate of Black individuals imprisoned is 6.7 times the rate of white individuals.[4]

38.    Racial disparities in the population of incarcerated individuals result in those same disparities among returning citizens looking to rebuild their lives with the burden of past criminal convictions.

39.    In April 2016, the U.S. Department of Housing and Urban Development (HUD) issued guidance confirming policies that create barriers to housing based on criminal records have a disproportionate adverse effect on Black individuals because of disparities in the criminal justice system.   *See* Exhibit 3, HUD, Office of Gen. Counsel Guidance on Application of FHA Standards to the Use of Criminal Records by Providers of Housing and Real Estate-Related Transactions ("HUD Guidance") (Apr. 4, 2016) at 2.  The HUD guidance cautioned that policies that ban persons with prior convictions are never necessary to achieve the potentially legitimate interest of protecting safety or property.  *Id.* at 6.  Policies that fail to account for the nature and severity of past crimes are unlikely to constitute policies that are necessary to serve a substantial, legitimate,

---

[3] See The Sentencing Project: U.S. Criminal Justice Data, https://www.sentencingproject.org/research/us-criminal-justice-data/?state=michigan.
[4] See The Sentencing Project: U.S. Criminal Justice Data, https://www.sentencingproject.org/research/us-criminal-justice-data/?state=michigan.

nondiscriminatory interest, even if these policies do not ban all felony convictions. *Id.* at 7.

<u>Count 1:  Disparate impact race discrimination in violation of Fair Housing Act, 42 U.S.C. § 3604 (Defendant Krimson)</u>

40.     Plaintiff reaffirms all previous paragraphs as if restated herein.

41.     The Fair Housing Act prohibits discrimination in housing practices on the basis of protected class status, including race, under a theory of disparate impact. 42 U.S.C. § 3604; 24 CFR § 100.500.

42.     Krimson's acts, policies, and practices regarding screening of tenant applicants with criminal convictions actually or predictably results in a disparate impact on Plaintiff and other Black applicants.

43.     Krimson's policies are not necessary to achieve one or more substantial, legitimate, nondiscriminatory interests.

44.     Further, Krimson's interests could be served by other policies or practices that have a less discriminatory effect on Plaintiff and other Black applicants.

45.     Accordingly, Krimson's overly restrictive tenant screening policies related to criminal convictions constitute a practice which has caused an adverse impact on Plaintiff and others based on race, in violation of 42 U.S.C. § 3604 and 24 C.F.R. § 100.500, because they actually or predictably result in a disparate impact on the basis of race.

<u>**Count 2:  Disparate treatment on the basis of race in violation of Fair Housing Act, 42 U.S.C. § 3604 (Defendant Krimson)**</u>

46.     Plaintiff reaffirms all previous paragraphs as if restated herein.

47.     The Fair Housing Act prohibits discrimination in housing practices on the basis of protected class status, including race. 42 U.S.C. § 3604.

48.     Upon information and belief, Krimson has established policies regarding criminal convictions that are intended to result in a tenant population that is disproportionately white and excludes many potential Black tenants.

49.     Upon information and belief, Krimson's decision to deny admission to Plaintiff was based on criminal conviction, even though it had been expunged.

50.     Upon information and belief, Krimson applied its screening criteria more aggressively for Plaintiff than it has for other than applicants who are white.

51.     Upon information and belief, Krimson's asserted reasons for denying Plaintiff's application for tenancy are a pretext for its actual discriminatory reasons.

52.     Accordingly, Krimson has treated Plaintiff differently by making housing unavailable on the basis of race, in violation of 42 U.S.C. § 3604.

<u>**Count 3:  Disparate impact race discrimination in violation of the Elliott-Larson Civil Rights Act (Defendant Krimson)**</u>

53.     Plaintiff reaffirms all previous paragraphs as if restated herein.

54.     The Elliott-Larson Civil Rights Act ("ELCRA") prohibits discrimination in a variety of contexts, including housing on the basis of race, under a theory of disparate impact. Mich. Comp. Laws § 37.2502.

55.     Krimson's acts, policies, and practices regarding screening of tenant applicants with criminal convictions actually or predictably results in a disparate impact on Plaintiff and other Black applicants.

56.     Krimson's policies are not necessary to achieve one or more substantial, legitimate, nondiscriminatory interests.

57.     Further, Krimson's interests could be served by other policies or practices that have a less discriminatory effect on Plaintiff and other Black applicants.

58.     Accordingly, Krimson's overly restrictive tenant screening policies related to criminal convictions constitute a practice which has caused an adverse impact on Plaintiff and others based on race, in violation of ELCRA, because they actually or predictably result in a disparate impact on the basis of race.

### Count 4:  Disparate treatment race discrimination in violation of ELCRA (Defendant Krimson)

59.     Plaintiff reaffirms all previous paragraphs as if restated herein.

60.     ELCRA prohibits discrimination in a variety of contexts, including housing on the basis of race. Mich. Comp. Laws § 37.2502.

61.     Upon information and belief, Krimson has established policies regarding criminal convictions that are intended to result in a tenant population that is disproportionately white and excludes many potential Black tenants.

62.     Upon information and belief, Krimson's decision to deny admission to Plaintiff was based on her criminal conviction, even though it had been expunged.

63.     Upon information and belief, Krimson applied its tenant screening criteria more aggressively for Plaintiff than it has for other than applicants who are white.

64.     Upon information and belief, Krimson's asserted reasons for denying Plaintiff's application for tenancy are a pretext for its actual discriminatory reasons.

65.     Accordingly, Krimson has treated Plaintiff differently by making housing unavailable on the basis of race, in violation of Mich. Comp. Laws § 37.2502.

## Count 5:  Violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.* (Defendant RentGrow)

66.     Plaintiff reaffirms all previous paragraphs.

67.     Under the FCRA, a consumer reporting agency must "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b).

68.     When preparing a report, a consumer agency "shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e.

69.     RentGrow willfully failed to comply with the FCRA's requirements to follow reasonable procedures to assure accuracy of Ms. Edwards's criminal history report before providing it to Krimson.  15 U.S.C. § 1681n.

70. In the alternative, RentGrow negligently failed to comply with the FCRA's requirements to follow reasonable procedures to assure accuracy of Ms. Edwards's criminal history report before providing it to Krimson. 15 U.S.C. § 1681o.

## REQUESTED RELIEF

Plaintiff respectfully requests that this Court grant it the following relief:

a. Enter a declaratory judgment finding that Defendant Krimson's policy and practices violate the Fair Housing Act and ELCRA;

b. Enter a permanent injunction enjoining Defendant Krimson from enforcing its current policy and practices regarding screening for criminal convictions and directing Defendant to establish new policy and practices that are consistent with the Fair Housing Act, the HUD Guidance, and ELCRA;

c. Award economic and non-economic damages to Plaintiff;

d. Award punitive damages to Plaintiff;

e. Award Plaintiff its reasonable attorney's fees and costs under 42 U.S.C. § 3613(c)(2), Mich. Comp. Laws § 37.2502, 15 U.S.C. § 1681n and 15 U.S.C. § 1681o;

f. Award prejudgment interest to Plaintiff; and

g. Order such other relief as the Court deems just and equitable.

PINSKY SMITH, PC
Attorneys for Plaintiff


Dated: January 26, 2024            By:    /s/ Sarah R. Howard
                                          Sarah Riley Howard
                                          Crystal Bultje
                                          Elizabeth L. Geary
                                          146 Monroe Center St NW, Suite 418
                                          Grand Rapids, MI  49503
                                          (616) 451-8496
                                          showard@pinskysmith.com



**JURY DEMAND**

Plaintiff demands a trial by jury.



PINSKY SMITH, PC
Attorneys for Plaintiff


Dated: January 26, 2024            By:    /s/ Sarah R. Howard
                                          Sarah Riley Howard
                                          Crystal Bultje
                                          Elizabeth L. Geary
                                          146 Monroe Center St NW, Suite 418
                                          Grand Rapids, MI  49503
                                          (616) 451-8496
                                          showard@pinskysmith.com